IN THE MATTER OF GERALD G. FUCHS.

[No. 974S188.  Filed February 3, 1976.]

*Don A. Tabbert, Sparrenberger Duvall Tabbert & Lalley,* of Indianapolis, *Thomas H. Terrell, Lacey Terrell Annakin & Heldt,* of Evanville, for respondent.

*Richard H. Grabham,* Executive Secretary, *David B. Hughes,* Trial Attorney for Indiana Supreme Court Disciplinary Commission.

PRENTICE, J.—This is a disciplinary proceeding. The matter is before us upon the Hearing Officer's findings of fact heretofore submitted without recommendations and further upon the Respondent's petition for review of such findings, motion for the Court to fix a briefing schedule, the Disciplinary Commission's response thereto, the Respondent's reply to the Commission's response, and the Respondent's subsequent petition for leave to file brief.

The Respondent's petition for a review of the findings of the Hearing Officer is now granted. His motion to fix a briefing schedule is now denied. His petition for leave to file a brief is granted, and the filing of such brief is now noted.

The Court having reviewed the record of the evidence before the Hearing Officer, together with Respondent's brief, now finds that said findings are sustained by the evidence. Said findings are now accepted and adopted by the Court and disclose the following.

The Respondent was employed by Marcellus Schaefer in-

dividually and on behalf of his minor son to pursue a claim for damages for personal injuries sustained by the latter in an automobile accident. Marcellus subsequently died, and his wife, Marie, was substituted as personal representative and as next friend for the minor.

Suits were filed on October 1, 1971, and after extensive discovery and negotiations by Respondent, they were settled for $60,000.00 on May 24, 1972. The settlement proceeds were paid that date by six separate checks drawn by two insurance companies. The checks were all made payable jointly to the Respondent and to Marie Schaefer in various legal capacities. All checks were appropriately endorsed and deposited on May 26, 1972 to the checking account of the Respondent, which account was used by him for both his personal and professional affairs.

Between May 26, 1972 and December 11, 1972, Marie Schaefer attempted to collect the sum due her as personal representative of the estate of her deceased husband and as guardian for the injured minor, the total amount thereof being $30,000.00. The evidence does not reveal exactly how many attempts were made, but it is clear that she made diligent efforts and that on occasions the Respondent was inaccessible to her and subsequently failed to return her telephone calls and that upon other occasions, the Respondent cancelled appointments which she had made through his employees.

Ultimately, on December 11, 1972, the Respondent paid the amounts owing to Marie Schaefer by two checks, both dated December 15, 1972. These checks were drawn on the Respondent's account and when presented to the bank for payment on December 18, 1972, payment was refused by reason of insufficient funds. Said checks, however, were honored on December 21, 1972.

Respondent, in justification of his unconscionable delay in accounting to and paying Mrs. Schaefer, cited the press

of his other professional affairs and an initial belief, since determined to be incorrect, that a subrogation claim for medical expenses paid might be filed against Mrs. Schaefer for a portion of the funds.

During the period that Respondent wrongfully withheld payment of the trust funds from Mrs. Schaefer, he applied substantial portions thereof to his own use. Except for one five day period during said time, the Respondent's checking account balance was less than the $30,000.00 that he held in trust; and upon the date of drawing the checks by which payment was ultimately made, his checking account balance had dwindled to less than $1600.00.

By the above related conduct, Respondent violated his oath as an attorney at law of this State and Disciplinary Rules 9-102(A) and (B), which, in brief, prohibit the commingling of the client's funds with those of the lawyer and mandate the lawyer to account for and to pay over the client's funds with promptness. Such conduct prejudiced the rights of his client and reflect adversely upon Respondent's fitness to practice law. By reason of such violation, it is now ordered that the Respondent be and he hereby is suspended from the practice of law in the State of Indiana for a period of not less than ninety (90) days beginning April 1, 1976, and that he pay the costs of these disciplinary proceedings.

It is our unanimous judgment that the discipline provided herein is substantially less than should ordinarily be invoked in the future for breaches of this type; and we here serve notice upon the practicing bar that such flagrant misconduct will not be tolerated and that future violations of this nature will be met with considerably more severity. Our benevolence herein has been motivated by two considerations.

There is an abundance of evidence in the record that the Respondent has had an excellent reputation in every respect in the community in which he resides and among his fellow lawyers during his entire professional career now in its twenty-second year.

Further, we are not unmindful of reality, and we know that notwithstanding ethical proscriptions against such conduct, the commingling and temporary borrowing of clients' funds, although not a common practice, has nevertheless been engaged in by a considerable number of otherwise competent and ethical lawyers. We attribute this to carelessness and arrogance rather than dishonesty. Until recently, the enforcement of professional ethics has been lax, and doubtlessly many lawyers have been lulled into a sense of false security, believing that one's own conscience and good intentions are sufficient guides for the conduct of his professional affairs. We are determined to improve the public image of the legal profession in this State through the rigorous enforcement of the Code of Professional Responsibility adopted in 1971. Since the adoption of that Code and the establishment of our Disciplinary Commission, however, this is the first case of this nature to come before us; and while we will not hesitate to invoke more severe sanctions for such conduct in the future, we believe that disbarment or a lengthy suspension in this case would be unwarranted in view of both our prior laxity and the Respondent's prior good record.

It is further ordered that the Respondent may, at any time after the 80th day of suspension, filed with the Clerk of this Court his petition for reinstatement, together with the receipt of said Clerk for the payment of the aforesaid costs, and a copy of said petition and receipt with the Supreme Court Disciplinary Commission, which Commission shall file objections thereto, if any, within ten (10) days thereafter. Absent such objections, said petition will be granted without further proceedings. Otherwise, such suspension shall continue pending the further order of this Court.

Givan, C.J., Arterburn, DeBruler and Hunter, JJ., concur.

NOTE.—Reported at 340 N.E.2d 762.